IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

GLENN FRANCIS BAUGHMAN                                                                    PLAINTIFF

v.                                          Civil No.  14-5314

SHERIFF KELLEY CRADDUCK;
LIEUTENANT DARNER; DEPUTY
NORTHROB; DEPUTY SCOTT;
DEPUTY PHILLPOT; DEPUTY PARK;
SERGEANT DEWEY; CORPORAL
PEARSON; DEPUTY APPLEGATE;
DEPUTY J. MARTINEZ; DEPUTY
McELLROY; and DEPUTY WILKENS                                                       DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights case filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis.*

Plaintiff is currently incarcerated in the United States Penitentiary in Tucson, Arizona (USP Tucson).  The events that are the subject of this case occurred while he was incarcerated in the Benton County Detention Center (BCDC) in Bentonville, Arkansas.  Plaintiff contends his constitutional rights were violated when: (1) he was denied access to the courts; (2) he was deprived of his property without Due Process of law; (3) his grievances were improperly handled or ignored; and (4) his transportation back to Arizona was delayed despite the dismissal of the Arkansas state criminal charges.

Defendants have filed a motion for summary judgment, and Plaintiff has filed a written response.  (Docs. 24, 29).  The motion is ready for decision.

**1. Background**

On June 28, 2014, Plaintiff was booked into the BCDC on state criminal charges. *Defendants' Exhibit* (hereinafter *Defts' Ex.*) A-1 at 10-13. He was transported from the USP Tucson to face the state criminal charges. *Id.* He was set for trial on October 23, 2014. *Id.* The charges were nolle prossed on October 22, 2014. *Id.* Plaintiff remained at the BCDC until November 3, 2014, at which time he was transferred back to USP Tucson. *Id.* at 10.

While he was at the BCDC, he sought, and was granted, access to the law library to work on a *pro se* appellate brief to be filed with the United States Court of Appeals for the Eighth Circuit, Case No. 14-1803, in connection with his appeal from a criminal conviction in *United States v. Baughman*, CR 13-50080. He brought no legal papers with him to the BCDC. *Defts' Ex.* B at 17.

Plaintiff requested access to the law library on July 16, 2014, and his request was approved. *Defts' Ex.* A-1 at 30. On July 25, 2014, Plaintiff asked to go to the law library again and was advised to just ask a pod deputy. *Id.* at 35.

Plaintiff found the BCDC law library to be wholly inadequate. He maintained he needed access to the United States Supreme Court Reporter, the Federal Reporters, the federal statutes, and Shepherds to conduct research on: (1) illegal search and seizure of third party dwellings; and (2) unlawful arrest. He also complained about missing pages, out-dated material, and incomplete sections. He submitted grievances regarding the contents of the law library and/or the items he needed access to on September 19, 24, and October 2, 2014. *Defts' Ex.* A-1 at 41, 42, 83. On September 24, 2014, Lieutenant Darner asked what Plaintiff was looking for in the library to research so that they could assist the Plaintiff. *Id.* at 42. Sergeant DeVore responded to Plaintiff's grievances as well, advising him that the new library should be up and running the

next week. *Id.* Lieutenant Darner also responded with multiple pages of information quoted from cases. *Id.* at 45-73. Unfortunately, much of the quoted material did not deal with the issues Plaintiff was concerned with and instead discussed school desegregation. *See id.* at 50-73.

On August 11, 2014, the BCDC entered into a contract with Westlaw for Internet law library access. *Defts' Ex.* A-4. The Internet law library was not immediately accessible, however, and the materials were not available until mid-October. *Defts' Ex.* A at ¶ 8.

On October 1, 2014, a shakedown of Pods E-104 and E-107 was performed by the Special Emergency Response Team (SERT). *Defts' Ex.* A-3. The search was for contraband and to maintain a deterrent operational presence within the facility. *Id.* Contraband was seized and trash or extra items were removed from the cells. *Id.* Deputies Scott, McEllroy, Philpot, Northrob, Applegate, Sergeant Dewey, and Corporal Pearson were all involved in the shakedown. *Id.* The inmates were all removed from the pod and put in the recreation yard. *Id.* Plaintiff was therefore not in a position to see who searched his bunk area. *Id.*

"[C]ontraband is anything in the possession of the inmate or in one's cell that wasn't issued by jail staff and/or any commissary item that has been altered or used for another purpose than what it was originally intended for." *Defts' Ex.* A at ¶ 4. Contraband could include extra items, excessive paper or property, damaged property, or trash. *Id.* at ¶ 6.

Following the shakedown, Plaintiff discovered his legal material was missing. Plaintiff indicated the material consisted of a number of cases he had been sent by the United States Clerk's Office for the Eighth Circuit as well as some cases he received from other parties. These materials were in between blue card stock and held together by a short piece of string or twine. *Defts' Ex.* A-1 at 79; *Defts' Ex.* B at 9, 16-20. The top piece of blue card stock had the name of

a case on it, and Plaintiff had also written on the top of it the words "legal material." *Defts' Ex.* B at 17-20. He had it stored in a bookshelf near his bunk. *Id.* at 17.

Plaintiff informed Deputy Northrob about the missing legal material and was told to talk to the pod control deputy, Deputy Wilkins. *Defts' Ex.* A-1 at 80. When Plaintiff attempted to talk to Deputy Wilkins, he was told "not to talk to him about it." *Id.* Plaintiff submitted grievances about the missing legal materials on October 1, 2, and 3, 2014. *Defts' Ex.* A-1 at 79-82 He told the Defendants that he needed the material to work on his *pro se* appellate brief. *Id.* at 80.

Both Lieutenant Martinez and Sergeant Dewey told him that they never took legal material. Just in case, Lieutenant Martinez suggested Plaintiff ask the pod deputy to check Plaintiff's property. The legal materials were not in his property and were never found while Plaintiff was incarcerated at the BCDC.

Plaintiff testified that because he did not have the materials, he had to file several requests to hold the case in abeyance and/or for extensions of time from the Eighth Circuit. *Defts' Ex.* C. He was granted three extensions, but denied a fourth. *Id.*

As soon as his state charges were dismissed, Plaintiff began asking when he would be transferred back to USP Tucson. *See e.g., Defts' Ex.* A-1 at 87. Plaintiff noted that he had a federal appeal brief due shortly, and needed the legal material that was in his property at USP Tucson. *Id.* at 88. Sergeant Devore replied that Plaintiff would be returned as soon as they had a trip going that way. *Id.* On October 27, 2014, Plaintiff stated that he needed to be transported because his deadline to file his brief was November 4, 2014. *Id.* at 89. He stated that if he missed his deadline, he would "bring the wrath of the ACLU, congress, state representatives, and any civil rights groups" on them. *Id.* On October 28, 2014, Plaintiff submitted a grievance,

stating that he could not work on his brief at the BCDC due to a lack of resources. *Id.* at 92; *see also Defts' Ex.* A-1 at 95-96.

After his return to USP Tucson, Plaintiff filed another motion for extension of time on November 20, 2014. *Defts' Ex.* C. The motion was granted in part, and Plaintiff was given until December 5, 2014, to file his brief. *Id.* He mailed his brief on December 5, 2014, and it was filed on December 11, 2014. *Defts' Ex.* B at 23-24; *Defts' Ex.* C. The decision of the district court was affirmed on March 30, 2015. *Defts' Ex.* C. Plaintiff filed a petition for rehearing, which was denied. *Id.* He then filed a petition for writ of certiorari to the United States Supreme Court. *Id.* It was denied on October 5, 2015. *Id.*

At his deposition, Plaintiff explained that he sued Lieutenant Darner and Deputy Martinez because they always responded to his requests at the kiosk by saying that they did not take his legal work or know what happened to it. *Defts' Ex.* B at 24. He sued all the deputies involved in the search because they would not tell him who searched his cell and who removed his legal work. *Id.* at 25. He named Sheriff Cradduck as a defendant because he was the boss and was over the jail. *Id.* at 28. Sheriff Cradduck was not present during the search. *Id.*

Plaintiff believes the search itself violated his rights because he was not provided with receipts for the property taken, including commissary items removed. *Defts' Ex.* B at 29-30. In every other search he had been involved in, he was notified of what was removed and why. *Id.* at 31. He does not believe that his paperwork was taken as a matter of policy. *Id.*

**2. Applicable Standard**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2)

the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).

The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. See McCleary v. ReliaStar Life Ins. Co., 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### 3. Discussion

Defendants have moved for summary judgment on the following grounds: (1) there is no basis on which Sheriff Cradduck may be held liable; (2) there is no evidence that any of the Defendants were personally responsible for disposing of Plaintiff's paperwork; (3) Defendants did not deny the Plaintiff access to the courts; (4) Plaintiff was not denied Due Process; (5) Defendants are entitled to qualified immunity; and (6) there is no basis for official capacity liability.

AO72A
(Rev. 8/82)

**(A). Section 1983**

Section 1983 imposes civil liability upon one:

> who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.

**(B). Sheriff Cradduck**

Plaintiff's claims against Sheriff Cradduck are based on the fact that, as Sheriff, he is in charge of the jail. To establish personal liability of a supervisory defendant, a plaintiff must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights. Clemmons v. Armontrout, 477 F.3d 962, 967 (8th Cir. 2007) (quoting Mayorga v. Missouri, 442 F.3d 1128, 1132 (8th Cir. 2006)); Mark v. Nix, 983 F.2d 138, 139-40 (8th Cir. 1993). No such showing has been made here. Defendant Cradduck is, therefore, entitled to summary judgment in his favor.

**(C). Access to the Courts**

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996) (citing Lewis v. Casey, 518 U.S. 343 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977)). In Myers, the Eighth Circuit stated that:

> [t]o protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared. Inmates do not have a right, however, either to law libraries or to unlimited stamp allowances for legal mail. Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts.

AO72A
(Rev. 8/82)

> To state a claim that a law library or legal assistance program violates this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims. Alleging theoretical inadequacies is insufficient. Inmates must instead show, for example, that a complaint that they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all.

Myers, 101 F.3d at 544 (citations omitted).

In Cody v. Weber, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the Supreme Court in Lewis, 518 U.S. 343, and Bounds, 430 U.S. 817, "determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'" Cody, 256 F. 3d at 767-68 (quoting Lewis, 518 U.S. at 354-55); see also White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007) ("Meaningful access to the courts is the capability to bring 'actions seeking new trials, release from confinement, or vindication of fundamental civil rights'") (quoting Bounds, 430 U.S. at 827).

"To prove actual injury, [Plaintiff] must 'demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded.'" White, 494 F.3d at 680. Here, although Plaintiff was required to seek multiple extensions of time, he was able to file his brief within the time allowed by the Eighth Circuit. The undersigned also notes that, during his incarceration at the BCDC, Plaintiff was able to file this civil rights case on October 16, 2014. As Plaintiff suffered no injury, this claim fails as a matter of law. Johnson v. Hamilton, 452 F.3d 967, 973-74 (8th Cir. 2006)("To sustain his claim based on denial of access to legal materials, counsel, or the courts, [Plaintiff] must prove that he suffered an actual injury or prejudice as a result of the alleged denial of access")(citation omitted).

Further, even if Plaintiff had suffered some injury from the confiscation or destruction of the legal materials, there is nothing to suggest that the Defendant who actually took the materials, whoever that may have been, from Plaintiff's cell "acted with some intentional motivation to restrict [Plaintiff's] access to the courts," which is what is required to prevail on an access-to-the-courts claim.  Morris v. City of Chillicothe, 512 F.3d 1013, 1020-21 (8th Cir. 2008).  Defendants are, therefore, entitled to summary judgment on this claim.

**(D). Deprivation of Property without Due Process**

Plaintiff does not contend the search itself was unconstitutional.  Nor could he.  In Hudson v. Palmer, 468 U.S. 517, 529-30 (1984), the Supreme Court held that prisoners have no legitimate expectation of privacy in their prison cell, and thus the Fourth Amendment proscription against unreasonable searches does not apply to prison cells.

"The Due Process Clause of the Fourteenth Amendment provides that '[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law.'" Walters v. Wolf, 660 F.3d 307, 311 (8th Cir. 2011)(quoting U.S. Const. Amend. XIV, § 1).  "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." Matthews v. Eldridge, 424 U.S. 319, 332 (1976)(internal quotation marks omitted).  "In some circumstances . . . the Court has held that a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process." Zinermon v. Burch, 494 U.S. 113, 128 (1990).

When the deprivation is the result of a random and unauthorized act and not pursuant to some established state procedure, the Court has held that "adequate postdeprivation remedies

satisfy the requirements of due process." Walters, 660 F.3d at 312 (citations omitted). "The loss of property . . . is in almost all cases beyond the control of the State, in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." Id.

Thus, even if one or more of the Defendants intentionally deprived the Plaintiff of the legal materials, a post-deprivation remedy is all the process Plaintiff is due. See Hudson, 468 U.S. at 533 (intentional deprivation of property does not violate due process when meaningful post-deprivation remedy is available); Sellers by and through Sellers v. Baer, 28 F.3d 895, 902-03 (8th Cir.1994)(Inadvertence, negligence, or even gross negligence is insufficient to state a claim under § 1983). Arkansas law provides Plaintiff with a cause of action for conversion. See e.g, Elliot v. Hurst, 307 Ark. 134, 817 S.W.2d 877, 880 (1991)(cause of action for conversion lies where distinct act of dominion is exerted over property in denial of owner's right).

**(E). Grievance Responses**

"Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted); see also Lombolt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002)(denial of grievances does not state a substantive constitutional claim); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)("no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [Plaintiff] submitted for consideration"); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to grievance procedure); Blagman v. White, 112 F.

-10-

Supp. 2d 534 (E.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure), aff'd, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." Blagman, 112 F. Supp. 2d at 542 (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)). A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." Id. (citation omitted). "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).

Plaintiff has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures. He makes no argument that: he was treated differently from other similarly situated prisoners; his grievances were ignored because of his exercise of his constitutional rights; or his ability to exercise any specific constitutional right was chilled by Defendants' actions. Defendants are entitled to judgment in their favor on this claim.

**(F). Delay in Arranging Transfer**

Inmates have no constitutional right to be incarcerated in any particular institution. Montanye v. Haymes, 427 U.S. 236 (1976). Plaintiff was lawfully transferred to the BCDC. Plaintiff was not entitled to release upon the dismissal of the state charges. He was still serving a federal sentence. To transfer Plaintiff back to an out-of-state prison, Defendants had to make suitable arrangements for Plaintiff's security and the security of the transport officers. In this

case, the delay was short--from October 22 to November 3, 2014. There is no constitutional violation. Defendants are entitled to judgment in their favor on this claim.

### (G). Qualified Immunity

Having found that the facts do not make out any constitutional violations, Defendants are entitled to qualified immunity. See, e.g., Knout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### (H). Official Capacity Liability

A Plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403 (1997). "There are two basic circumstances under which municipal liability will attach: (1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." Mole v. Anderson, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted). Plaintiff has not pointed to "any officially accepted guiding principle or procedure that was constitutionally inadequate." Jenkins v. County of Hennepin, 557 F.3d 628, 633 (8th Cir. 2009).

"[A] custom can be shown only by adducing evidence of a continuing, widespread, persistent pattern of unconstitutional misconduct." Id. at 634 (internal quotation marks and citation omitted). There is no genuine issue of material fact as to whether there is any widespread,

persistent pattern of unconstitutional conduct with respect to the shakedown procedures. Defendants are entitled to summary judgment on the official capacity claim.

### 4. Conclusion

For the reasons stated, I recommend that Defendants' motion for summary judgment (Doc. 24) be **GRANTED and the case DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 29th day of July 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE